1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOEL JOHNSON,

          Plaintiff,

   v.

FEDERAL HOME LOAN
MORTGAGE CORPORATION,

          Defendant.

C12-1712 TSZ

ORDER

     THIS MATTER comes before the Court on Defendant Federal Home Loan

Mortgage Corporation's ("Freddie Mac") Motion to Dismiss Plaintiff's Complaint for

Failure to State a Claim, docket no. 7, and Plaintiff Joel Johnson's Motion to Amend,

docket no. 20.  Having reviewed the parties' briefs, as well as the papers filed in

connection therewith, the Court enters the following Order.

**I.**     <u>**Background**</u>

     Plaintiff refinanced his home with a loan from Taylor, Bean & Whitaker Mortgage

Company ("TBW") in 2008.  First Amended Complaint ("FAC"), docket no. 6-4, at

ORDER - 1

1    ¶ 5.2; see also Promissory Note and Deed of Trust, docket no. 7, Exs. 1-2.[1]  The loan was

2    serviced by TBW.  FAC at ¶ 5.2.  Sometime after the loan closed, Freddie Mac purchased

3    Plaintiff's loan in the secondary mortgage market.[2]  FAC at ¶ 5.2.

4            The Deed of Trust required Plaintiff to pay to the lender funds for certain escrow

5    items including taxes and assessments, and mortgage insurance.  Deed of Trust at 5.

6    Plaintiff held a policy of homeowner's insurance with Safeco Insurance Company of

7    America and periodically paid funds for the Safeco insurance premium into the escrow

8    account held by the lender on his behalf.  FAC at ¶¶ 5.4-5.5.  Under the terms of the Deed

9    of Trust, the lender "shall apply the funds to pay the Escrow Items no later than the time

10   specified under RESPA."  Deed of Trust at 5.   In October of 2008, TBW failed to pay to

11   Safeco the insurance premium that was due on Plaintiff's policy.[3]  FAC at ¶ 5.6.  As a

12   result, in December 2008, Safeco cancelled Plaintiff's policy.  Id. at ¶ 5.7.

13           On January 25, 2009, Plaintiff's home was damaged in a fire.  Id. at ¶ 5.9.

14   Plaintiff tendered a claim to Safeco and the claim was denied due to the fact that the

---

16   [1] A court may consider material which is properly submitted as part of the complaint on a motion to
     dismiss without converting it into a motion for summary judgment.  Lee v. City of Los Angeles, 250 F.3d
17   668, 688 (9th Cir. 2001). Where the documents are not physically attached to the complaint, they may be
     considered if the documents' "authenticity ... is not contested" and "the plaintiff's complaint necessarily
18   relies" on them.  Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998).  The Court takes judicial
     notice of the Promissory Note and the Deed of Trust that set forth the terms of the mortgage contract
19   between Johnson and TBW.  The contents of the Note and the Deed of Trust are alleged in the Complaint
     and no party questions their authenticity.

20   [2] This fact is acknowledged in Plaintiff's briefing, but not included in the FAC.  Plaintiff's Response,
     docket no. 19, at 2 ("[TBW] then sold the subject loan and security interest to Freddie Mac.  Accordingly,
21   Freddie Mac became the Lender pursuant to the Note and Deed of Trust.").

22   [3] The FAC alleges that Freddie Mac failed to pay the insurance premium to Safeco.  The Plaintiff's brief
     clarifies that TBW failed to make the payment and argues that Freddie Mac is liable for TBW's action
     because TBW was acting as Freddie Mac's agent.

23

ORDER - 2

insurance policy had been cancelled for non-payment.  <u>Id.</u> at ¶ 5.10.  As a result,
Plaintiff's home was covered by a lender-placed insurance policy with Mount Vernon
Fire Insurance Company that had become effective when the Safeco policy was
cancelled.  <u>Id.</u> at ¶¶ 5.12-13.  Ultimately, Mount Vernon and Safeco both contributed to
the cost of repairing Plaintiff's home and other losses sustained in the fire.  <u>Id.</u> at
¶¶ 5.14-15.

In 2009, TBW filed for bankruptcy and Cenlar FSB d/b/a Central Loan
Administration & Reporting ("Cenlar") took over as the servicer of Plaintiff's loan on
behalf of Freddie Mac.  <u>Id.</u> at ¶ 5.13.

Plaintiff stopped paying his mortgage premium beginning in March 2010.  <u>Id.</u> at
¶ 5.16.  He alleges that this was a result of additional, uncompensated living expenses
resulting from the fire and the fact that Freddie Mac increased Plaintiff's monthly
mortgage payment from $1,500 per month to $2,300 per month to compensate for the
continued cost of the Mount Vernon insurance policy that had become effective when the
Safeco policy was cancelled.  <u>Id.</u> at ¶¶ 5.15-17.

Eventually, Plaintiff secured $186,000 from Safeco and Mount Vernon for the
repair of his home.  <u>Id.</u> at ¶ 5.18.  He provided these funds to Cenlar pursuant to his loan
agreement.  <u>Id.</u>  Plaintiff was not permitted to use the funds to commence repair of the
home because he was not current on his mortgage.  <u>Id.</u> at ¶ 5.19.  On June 3, 2011,
Plaintiff sent a letter to Cenlar, offering the $186,000 in insurance proceeds as full and
final satisfaction of his mortgage loan (which totaled approximately $213,000 at that

ORDER - 3

time).  Id. at ¶ 5.20; June 3, 2011, Letter from Plaintiff to Cenlar, docket no. 23, Ex. E.[4]

Cenlar sent a letter to Plaintiff on July 8, 2011, accepting Plaintiff's offer.  Id. at ¶ 5.21;

July 8, 2011, Letter from Cenlar to Plaintiff, docket no. 23, Ex. F ("Freddie Mac, the

owner of your client's loan, has advised us that they will accept the hazard claim funds of

$185,000.00 in satisfaction of the loan.").

Plaintiff alleges that, despite this agreement, Freddie Mac has not performed its

obligation to relinquish all interests in the property and confirm final satisfaction of the

debt.  Instead, on August 24, 2011, Cenlar sent Plaintiff a notice of foreclosure.  Id. at

¶ 5.23.

Plaintiff filed a complaint in King County Superior Court on September 26, 2011,

alleging claims against Freddie Mac for declaratory judgment, breach of contract, breach

of fiduciary duty, negligence, and violation of the Washington Consumer Protection Act.

Docket no. 6.  Freddie Mac subsequently filed a motion for summary judgment on the

breach of fiduciary duty and negligence claims on April 4, 2012.  Id.  The superior court

denied the motion.  Id.  The parties then stipulated to allow Plaintiff to amend his

complaint.  Id.  Plaintiff's first amended complaint was filed in King County Superior

Court on October 3, 2012, and alleged for the first time a claim under the Real Estate

Settlement Procedures Act ("RESPA").  Id.  Freddie Mac removed the case to this Court

on October 4, 2012.  Docket no. 1.

---

[4] The Court takes judicial notice of the June 3, 2011, letter from Johnson to Cenlar, and the July 8, 2011, response because the letters are incorporated by reference into the FAC and no party questions their authenticity.

1    Freddie Mac moves to dismiss all of Plaintiff's claims under Rule 12(b)(6) arguing

2    that (1) Freddie Mac is not subject to successor-in-interest liability by virtue of its

3    purchase of mortgage loans on the secondary mortgage market; (2) as an assignee,

4    Freddie Mac has no direct liability for Plaintiff's claims as to the loan servicer's

5    performance of its duties under the mortgage agreements; (3) Freddie Mac is entitled to

6    protection under the <u>Merrill</u> doctrine; and (4) Freddie Mac is not vicariously liable for

7    post-assignment conduct of its servicer that allegedly violated state law or breached

8    Plaintiff's mortgage contract.  Motion to Dismiss, docket no. 7, at 2.  In addition to filing

9    a response to Freddie Mac's Motion to Dismiss, Plaintiff has filed a Motion to Amend his

10   complaint to add Cenlar as an additional defendant and to add claims for fraud,

11   conversion, and breach of the Washington Consumer Protection Act ("CPA") against

12   Freddie Mac and Cenlar.  Docket no. 20.

13       **II.    <u>Motion to Dismiss</u>**

14       Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not

15   provide detailed factual allegations, it must offer "more than labels and conclusions" and

16   contain more than a "formulaic recitation of the elements of a cause of action."  <u>Bell Atl.</u>

17   <u>Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  The complaint must indicate more than

18   mere speculation of a right to relief.  <u>Id.</u>  When a complaint fails to adequately state a

19   claim, such deficiency should be "exposed at the point of minimum expenditure of time

20   and money by the parties and the court."  <u>Id.</u> at 558.  A complaint may be lacking for one

21   of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a

22

23

1  cognizable legal claim.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th

2  Cir. 1984).

3        In ruling on a motion to dismiss, the Court must construe the complaint in the light

4  most favorable to the non-moving party.  Livid Holdings Ltd. v. Salomon Smith Barney,

5  Inc., 416 F.3d 940, 946 (9th Cir. 2005).  The Court must accept all well-pleaded

6  allegations of material fact as true and draw all reasonable inferences in favor of the

7  plaintiff.  Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998).

8  The question for the Court is whether the facts in the complaint sufficiently state a

9  "plausible" ground for relief.  Twombly, 550 U.S. at 570.  A claim is plausible on its face

10 "when the plaintiff pleads factual content that allows the court to draw the reasonable

11 inference that the defendant is liable for the misconduct alleged."  Aschcroft v. Iqbal, 556

12 U.S. 662, 678 (2009).  As a result, a complaint must contain "more than labels and

13 conclusions, and a formulaic recitation of the elements of a cause of action will not do."

14 Twombly, 550 U.S. at 555.

15        If the Court dismisses the complaint or portions thereof, it must consider whether

16 to grant leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).  Even

17 when a complaint fails to state a claim for relief, however, "[d]ismissal without leave to

18 amend is improper unless it is clear that the complaint could not be saved by an

19 amendment."  Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009).  The standard for

20 granting leave to amend is generous.  The court considers five factors in assessing the

21 propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party,

22

23

1  futility of amendment, and whether the plaintiff has previously amended the complaint.

2  United States v. Corinthian Colls., 655 F.3d 984, 995 (9th Cir. 2011).

3  ### *1.  Declaratory Judgment*

4        As an initial matter, Freddie Mac moves to dismiss Plaintiff's claim for

5  "declaratory judgment – formation and breach of contract," based on Freddie Mac's

6  alleged failure to perform on its agreement to accept $186,000 in insurance proceeds as

7  full and final satisfaction of Plaintiff's debt.  FAC at ¶ 6.1-6.4.  Freddie Mac argues that,

8  assuming that the parties' agreement constituted a contract, no breach occurred because

9  the funds were applied to satisfy the outstanding debt and the property was reconveyed to

10  Plaintiff.  In support, Freddie Mac has attached a copy of the deed of reconveyance.

11  Docket no. 7, Ex. 3.

12        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must be

13  treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 if

14  either party to the motion to dismiss submits materials outside the pleadings in support or

15  opposition to the motion, and if the district court relies on those materials.  Fed. R. Civ.

16  P. 12(b)(6); Jackson v. Southern California Gas Co., 881 F.2d 638, 643 n.4 (9th Cir.

17  1989).  Failure to treat the motion as one for summary judgment would constitute

18  reversible error.  See Bonilla v. Oakland Scavenger Co., 697 F.2d 1297, 1301 (9th Cir.

19  1982); Costen v. Pauline's Sportswear, Inc., 391 F.2d 81, 84-85 (9th Cir. 1968).

20  However, pursuant to Federal Rule of Evidence 201, a court may take judicial notice of

21  "matters of public record" without converting a motion to dismiss into a motion for

22  summary judgment.  Mack v. South Bay Beer Distrib., Inc., 798 F.2d 1279, 1282 (9th

23

1    Cir. 1986).  A court may not, however, take judicial notice of a fact that is subject to

2    reasonable dispute.  Fed. R. Evid. 201(b).

3         Freddie Mac urges the Court to take judicial notice of the deed of reconveyance

4    because it is an official public record.  The Court concludes that it may take judicial

5    notice of the deed of reconveyance because it is a public record and Plaintiff has failed to

6    demonstrate any reason to doubt its authenticity.  Although Plaintiff argues that the deed

7    of reconveyance is insufficient to satisfy Freddie Mac's obligation under the contract

8    because the Note has not been produced, the Court disagrees.  Because the deed of

9    reconveyance demonstrates that Freddie Mac has fulfilled its alleged duty under the

10   contract, the Court GRANTS Freddie Mac's motion to dismiss this claim.

11        **2.  _Breach of Contract/Breach of Fiduciary Duty_**

12        Plaintiff claims that Freddie Mac breached its contractual and fiduciary duties by

13   failing to pay Plaintiff's insurance premium to Safeco and by misappropriating the funds

14   from Plaintiff's escrow account that were intended for payment to Safeco.  FAC ¶¶ at

15   7.1-7.3, 8.1-8.3.  Although the FAC alleges that Plaintiff entered into a mortgage

16   agreement with Freddie Mac, the loan documents and the parties' briefing belie this

17   allegation.  Compare FAC at ¶ 5.1 (alleging that Plaintiff refinanced his home with a loan

18   from Freddie Mac) with Note at 1 (identifying TBW as the lender); Deed of Trust at 1

19   (same).  The parties agree that, in fact, Freddie Mac purchased Plaintiff's loan from TBW

20   on the secondary mortgage market at some later date.  In addition, the FAC alleges that

21   Plaintiff's mortgage loan was serviced first by TBW and later by Cenlar.  FAC at ¶ 5.2-

22   5.3.  Based on these facts, Plaintiff does not have a claim against Freddie Mac for

23

1  primary liability, but only for liability based on the underlying wrongs by TBW on a

2  theory of agency.  Freddie Mac argues that these claims are precluded because Freddie

3  Mac did not assume any liability for the servicers conduct when it acquired the loan on

4  the secondary market.  It also argues that the claims are barred by the <u>Merrill</u> doctrine.

5       **a.  Assumption of Liability**

6       Freddie Mac first argues that it did not assume liability for any breaches or other

7  wrongful conduct committed by prior owners of the loan (i.e. TBW).  This argument is

8  unpersuasive because Freddie Mac has not demonstrated that it did not own Plaintiff's

9  loan at the time of the alleged misconduct by TBW.  The FAC alleges that Freddie Mac

10 acquired the loan at or around the time of origination.  FAC at ¶¶ 5.2, 5.5-5.7.  On a

11 motion to dismiss under Rule 12(b)(6), the Court must accept the allegations in the

12 complaint as true.  <u>Wyler Summit</u>, 135 F.3d at 661 (9th Cir. 1998).

13      However, Freddie Mac also argues that, as an assignee of the mortgage between

14 TBW and Plaintiff, it did not assume any of the servicer's duties under the loan.  The

15 Court agrees.  In <u>Paslowski v. Standard Mortgage Corporation of Georgia</u>, 129 F.Supp.2d

16 793 (W.D. Pa. 2000), the plaintiffs sought to hold Freddie Mac liable under a theory of

17 "successor" liability.  <u>Id.</u> at 798 ("Apparently, plaintiffs' position is that simply by

18 purchasing the mortgage Freddie Mac thereby assumed responsibility for any and all

19 breaches or other wrongful conduct committed by any and all prior owners of the loan.").

20 The Court disagreed, concluding that Freddie Mac's status in relation to Community was

21 not as a successor-in-interest, but rather as an assignee of the mortgage rights.  The Court

22 went on to conclude that Freddie Mac was not liable for any allegedly wrongful conduct

23

by Community because an assignee is liable for past breaches of the assignor only if he

has "'expressly assumed any duties correlative with the right assigned, there being no

implication of assumption by the mere assignment.'" Id. (quoting Schneider v.

Dumbarton Developers, Inc., 767 F.2d 1007, 1018 (D.C. Cir. 1985)).  This is consistent

with the conclusion of other courts on this issue.  U.S. v. Thompson and Georgeson, Inc.,

346 F.2d 865, 869 (9th Cir. 1965) ("Merely as assignee one does not become

affirmatively liable for a deficit in the accounts between his assignor and the other party

to the assigned contract.  Any such liability would have to be based upon an affirmative

assumption, by the assignee, of the obligations of his assignor on the contract, or upon

some independent contractual arrangement."); Lachmar v. Trunkline LNG Co., 753 F.2d

8, 9-10 (2d Cir. 1985) (assignee of rights under a bilateral contract is not bound to

perform the assignor's duties under the contract unless he expressly assumes to do so).

Here, Freddie Mac purchased the Note with an assignment of rights by TBW.  However,

no facts are alleged to support the conclusion that Freddie Mac affirmatively assumed all

obligations and consequences of the mortgage contract between Plaintiff and TBW.  In

fact, to the contrary, servicing of the loan remained with TBW.

    Here, Plaintiff has failed to plead facts to support the allegation that Freddie Mac

expressly assumed "any duties correlative to the right assigned."  As such, Plaintiff has

failed to allege facts to support a plausible claim against Freddie Mac on the basis of

successor liability.

1

**b.  Merrill Doctrine**

2

Freddie Mac also argues that Plaintiff's claims for breach of contract and breach

3

of fiduciary duty are precluded by the Merrill doctrine.  In Federal Crop Ins. Corp. v.

4

Merrill, an agent of the Federal Crop Insurance Corporation informed the plaintiff that his

5

crops were insurable and would be covered under the government's crop insurance

6

program.  332 U.S. 380, 382 (1947).  On the basis of these representations, the plaintiff

7

planted 460 acres of wheat that were subsequently destroyed by a drought.  After review,

8

the corporation determined that the re-seeded portions of the acreage were not insurable

9

under the program and denied the plaintiff's claim for loss as to this wheat.  Id.

10

In upholding the government's denial of the claim, the Supreme Court

11

acknowledged that a private insurer under similar circumstances would be bound by the

12

representations of its agent.  Id.  However, the Court determined that the doctrine of

13

estoppel does not bind the government in the operation of a program controlled by federal

14

statute and regulation.  Id. at 384.  The Court held that an agent representing the Federal

15

Crop Insurance Corporation could not bind the corporation beyond his actual authority.

16

It explained:

17

> Government is not partly public or partly private, depending upon the
> governmental pedigree of the type of a particular activity or the manner in

18

> which the Government conducts it. The Government may carry on its
> operations through conventional executive agencies or through corporate

19

> forms especially created for defined ends. Whatever the form in which the
> Government functions, anyone entering into an arrangement with the

20

> Government takes the risk of having accurately ascertained that he who
> purports to act for the Government stays within the bounds of his authority.

21

Id. at 383-84.

22

23

ORDER - 11

In subsequent cases a number of courts have concluded that for purposes of the Merrill doctrine, Freddie Mac is a "federal agency."  See, e.g., Mendrala v. Crown Mortgage Company, 955 F.2d 1132 (7th Cir. 1991); Paslowski, 129 F. Supp. 2d 793.  In Mendrala v. Crown Mortgage Company, plaintiffs sued Freddie Mac and their mortgage servicer, Crown Mortgage Company, alleging, in part, breach of contract.  955 F.2d at 1133-34.  The district court dismissed the contract claim against Freddie Mac at summary judgment on the ground that Freddie Mac could not be bound by the unauthorized conduct of the servicer under Merrill because "estoppel does not lie against the government."  The Seventh Circuit affirmed.  Id. at 1134.

More recently, the Western District of Pennsylvania addressed whether the Merrill doctrine precluded liability against Freddie Mac under facts similar to those at issue here in Paslowski.  There, the Paslowskis entered into a mortgage agreement with South View Savings.  Nine years later, Community Savings Association acquired the mortgage when it consolidated with South View.  Later, Freddie Mac purchased a pool of mortgages from Community, including the Paslowskis'.  Pursuant to its seller/servicer agreement with Freddie Mac, Community continued to service the Paslowski mortgage.  Later Standard Mortgage Corporation of Georgia took over as servicer of the loan.  Paslowski, 129 F.Supp.2d at 796.

After prepaying their mortgage in full, the Paslowskis brought suit challenging the mortgagees' administration of the loan agreement.  As here, although the plaintiffs alleged direct liability against the owner of the mortgage, Freddie Mac, the complaint did

1   not allege any affirmative act committed by Freddie Mac.  Id. at 799-800.  Rather, the

2   complaint challenged the servicers' administration of the loan.

3       The district court granted Freddie Mac's motion to dismiss, determining that (1)

4   Freddie Mac was not liable for breaches committed by South View or Community prior

5   to the assignment of the mortgage rights to Freddie Mac, (2) the fiduciary relationship

6   between South View and plaintiff did not transfer automatically to Freddie Mac, and (3)

7   Freddie Mac was protected on the breach of contract claim from liability for its servicers'

8   breaches under the Merrill Doctrine.  Id. at 798, 803.  Freddie Mac argues that the facts

9   here are substantially similar to Paslowski and urges the Court to adopt similar reasoning

10  and dismiss Plaintiff's claims for breach of contract and breach of fiduciary duty based

11  on the alleged misdeeds of TBW and Cenlar.

12      For purposes of this analysis, Plaintiff does not dispute that Freddie Mac is a

13  governmental entity for purposes of the Merrill doctrine.  Response at 6 ("Freddie Mac is

14  treated as a government entity for purposes of the Merrill doctrine."); see also Paslowski,

15  129 F. Supp.2d 799-803.  However, the question before the Court is not whether Freddie

16  Mac is a governmental entity for purposes of Merrill analysis, but whether the alleged

17  breach of contract and breach of fiduciary duty claims are barred by the Merrill doctrine.

18  The answer to that question turns on whether or not the actions of TBW and Cenlar were

19  authorized or otherwise ratified by Freddie Mac.  Id. at 803 ("[Freddie Mac] is not bound

20  by the *unauthorized* acts of its sellers/servicers that it relies upon to service the

21  mortgages that it owns.").

22

23

1    In Paslowski, Freddie Mac's motion to dismiss was accompanied by the Freddie

2    Mac Single-Family Sellers and Servicers Guide ("the Guide") which outlines the

3    contractual relationship between Freddie Mac and its sellers/servicers.  Id. at 802-03.

4    "As approved Freddie Mac servicers, Community and Standard were governed by the

5    terms of the Guide and certain other 'purchase documents' as defined in § 1.2(a) of the

6    Guide."  Id.   Based on this, the Court concluded that "the alleged actions of Community

7    and Standard occurred outside the scope of their express authority under the Guide," and

8    that therefore, the Paslowskis' contract claims were barred by the Merrill doctrine.  Id. at

9    803-04.

10    The Guide is a publicly available document.[5]  Although, Freddie Mac has not cited

11    to the Guide in its motion to dismiss, Plaintiff has alleged no facts to support an inference

12    that TBW's failure to make Plaintiff's insurance payment was authorized or otherwise

13    ratified by Freddie Mac.  As such, the analysis in Paslowski supports dismissal of

14    Plaintiff's claims for breach of duty and breach of fiduciary duty.

15    For the reasons discussed above, the Court GRANTS Freddie Mac's motion to

16    dismiss Plaintiff's claims for breach of contract and breach of fiduciary duty.

17    3. ***Negligence***

18    Freddie Mac moves to dismiss Plaintiff's claim for negligence, arguing that he has

19    failed to demonstrate the existence of any duty.  As discussed above, Plaintiff has failed

20

21    ————————————————

22    [5] See http://www.allregs.com/tpl/Main.aspx.

23

ORDER - 14

1   to demonstrate that Freddie Mac had a duty to make the insurance payment to Safeco.

2   Therefore, the Court GRANTS the motion to dismiss this claim.

3       4. ***RESPA***

4       Freddie Mac argues that Plaintiff's RESPA claim is time barred because he did not

5   bring it within the 3 year time limitation contained in 12 U.S.C. § 2605.  This argument

6   fails.  Plaintiff filed his complaint in this action on September 26, 2011, less than three

7   years after TBW failed to make the insurance payment on Plaintiff's Safeco policy.

8   Docket no. 6.  Although Plaintiff did not amend his complaint to add the RESPA claim

9   until October 3, 2012, after the statute of limitations had expired, the amendment relates

10  back to the date of the original complaint because it asserts a claim that arose out of the

11  same conduct, transaction, or occurrence set out in the original pleading.  Fed. R. Civ. P.

12  15(c)(1)(B).  Plaintiff's RESPA claim is not time barred.

13      Freddie Mac also argues that the Court should dismiss the RESPA claim because

14  12 U.S.C. § 2605 applies only to loan servicers and the statute explicitly excludes Freddie

15  Mac from the definition of servicer.

16      The complaint alleges that Freddie Mac "had a statutory duty to 'make payments

17  from the escrow account for such taxes, insurance premiums, and other charges in a

18  timely manner as such payments become due.'"  This duty arises under 12 U.S.C.

19  § 2605(g), which provides:

20          If the terms of any federally related mortgage loan require the borrower to
            make payments to the servicer of the loan for deposit into an escrow
21          account for the purpose of assuring payment of taxes, insurance premiums,
            and other charges with respect to the property, the ***servicer*** shall make
22

23

ORDER - 15

payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

This provision does not apply to Freddie Mac because 12 U.S.C. § 2605(i)(2)(B) defines servicers as "the person responsible for servicing of a loan," and Freddie Mac is not, and never was, the servicer of Plaintiff's mortgage loan.

Plaintiff's RESPA claim fails because Freddie Mac is not a "servicer" under the statutory language.  The Court GRANTS Freddie Mac's motion to dismiss this claim.

### 5. *Consumer Protection Act*

To prevail in a private action under the CPA, RCW 19.86.090, a plaintiff must establish the following elements: (1) the defendant engaged in an unfair or deceptive act or practice; (2) the act or practice occurred in the conduct of trade or commerce; (3) the act or practice impacted the public interest; (4) the plaintiff suffered injury in its business or property; and (5) a causal link exists between the unfair or deceptive act or practice and the injury suffered.  Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784-93 (1986).  Failure to meet any of these elements is fatal.  Sorrel v. Eagle Healthcare, Inc., 110 Wn.App. 290, 298 (2002).

Freddie Mac moves to dismiss Plaintiff's CPA claim, arguing that the complaint does not plead sufficient facts to demonstrate that the public interest has been impacted by Freddie Mac's alleged violation of Plaintiff's mortgage contract by failing to make the insurance premium payment to Safeco.  The Court agrees.  Although Plaintiff argues in his brief that he was not the only homeowner to have his insurance cancelled, he fails to plead facts to support this argument in the complaint.  As such, he has failed to offer any

ORDER - 16

facts to support the inference that the act complained of impacted the public interest.  The

Court GRANTS Freddie Mac's motion to dismiss this claim.

### III.   Motion to Amend

Plaintiff moves the Court for permission to amend his complaint to add Cenlar as a

defendant and to add claims against Freddie Mac and Cenlar for fraud, conversion, and

violation of the CPA.  Freddie Mac objects to any further amendment of the complaint on

the grounds that the motion was brought in bad faith and that the proposed amendments

would be futile.

Whether to grant leave to amend a complaint is within the discretion of the district

court.  Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011).

In deciding whether to grant a motion to amend, the Court should consider the following

factors: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of

amendment; and (5) whether plaintiff has previously amended his complaint."  Allen v.

City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990).  The Court should not grant

leave to amend where amendment would be futile.  See Nunes v. Ashcroft, 348 F.3d 815,

818 (9th Cir. 2003).  Amendment is futile "only if no set of facts can be proved under the

amendment to the pleadings that would constitute a valid and sufficient claim or

defense."  Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).

#### 1.   *Bad Faith*

Freddie Mac argues, in essence, that Plaintiff is bringing these claims in bad faith

because he previously fabricated evidence in litigation against his insurers.  This is

propensity evidence that the Court declines to consider.

1    Freddie Mac also argues that the motion to amend is brought in bad faith because

2    it was filed after Freddie Mac filed its motion to dismiss.  This is also not sufficient to

3    demonstrate bad faith.  Plaintiff's motion to amend is premised on his understanding that

4    Freddie Mac denied being a party to the mortgage loan in its motion to dismiss.

5    Although this does not appear to be an accurate reading to Freddie Mac's argument,

6    Plaintiff's motion to amend was nonetheless brought in response to what he understood

7    to be a new admission by the Defendant.

8    **2.  _Futility_**

9       **a.  Fraud**

10    In order to prevail on a claim of fraud a plaintiff must produce evidence to support

11   each of nine elements: "(1) a representation of an existing fact; (2) materiality; (3) falsity;

12   (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted

13   on by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the

14   truth of the representation; (8) plaintiff's right to rely on it; and (9) damages." Stiley v.

15   Block, 130 Wn.2d 486, 505 (1996).  Plaintiff moves to amend his complaint to allege

16   fraud against Freddie Mac and Cenlar "because they made fraudulent written statements

17   to plaintiff claiming to be his secured lender."  Motion to Amend at 13.  This claim is

18   futile because Freddie Mac has not denied being the owner of Plaintiff's loan.

19    Plaintiff supports his motion to amend with the "fact" that Freddie Mac admits

20   that it is not the mortgagee.  Motion to Amend at 1, 11.  This misconstrues Freddie Mac's

21   argument.  Freddie Mac has consistently represented that it purchased Plaintiff's

22   mortgage from TBW on the secondary mortgage market.  See Response to Motion to

23

ORDER - 18

Amend at 4.  The "admission" relied upon by Plaintiff does not appear to be an admission that Freddie Mac did not purchase the mortgage, but a response to the fact that Plaintiff alleges primary liability against Freddie Mac without identifying any underlying wrong by Freddie Mac.  Complaint at ¶ 5.2.  The section of Freddie Mac's motion to dismiss under the caption "Freddie Mac is not the Mortgagee" concludes with the statement that Freddie Mac ***could*** be held liable for breaches or other wrongful conduct based on a theory of vicarious liability for the actions of its loan servicers.  Because Plaintiff has failed to demonstrate that statements by Freddie Mac claiming to be his secured lender were false, the motion to amend would be futile.

Further, Plaintiff cannot demonstrate that he was damaged by the alleged fraudulent statements because the insurance proceeds were ultimately used to pay off the loan at his request and the property was reconveyed to him.

### b.  Conversion

In Washington, the common-law tort of conversion is defined as a willful interference with a chattel without lawful justification, whereby a person entitled to possession of the chattel is deprived of the possession of it.  Paris American Corp. v. McCausland, 52 Wn.App. 434 (1988); Eggert v. Vincent, 44 Wn.App. 851 (1986).  The plaintiff must plead and prove both an ownership interest in the property and either possession or an immediate right to possession at the time of conversion.  Eggert, 44 Wn.App. at 854; but see Meyers Way v. University Savings, 80 Wn.App. 655, 675 (1996), review denied 130 Wn.2d 1015 (1996) (concluding modern rule only requires the plaintiff to have some property interest in the goods allegedly converted).  If conversion

is established, the general measure of damages is the fair market value of the property at the time of the conversion, absent willful misconduct by the defendant.

Here, Plaintiff argues that Freddie Mac and Cenlar are liable for conversion of the insurance proceeds because they took the funds based on the misrepresentation that Freddie Mac owned the loan.  Amendment of the complaint based on this theory of liability would be futile because, as discussed above, Freddie Mac has consistently represented that it purchased the loan on the secondary market.  Moreover, Freddie Mac has already reconveyed the property to Plaintiff negating any claim of damages based on the alleged conversion.

### c.  Consumer Protection Act

Finally, Plaintiff moves to amend the complaint to add a CPA claim against Freddie Mac and Cenlar based on their admission "that they were not parties to the Deed of Trust and were not the mortgagee."  This is simply not the case.  Plaintiff has alleged that Freddie Mac was the lender and Freddie Mac agrees that it purchased Plaintiff's loan on the secondary mortgage market.  As such, Plaintiff's proposed amendment would be futile.

For the foregoing reasons, the Court DENIES Plaintiff's motion to amend as futile.

### IV.   <u>Conclusion</u>

The Court GRANTS Freddie Mac's Motion to Dismiss, docket no. 7.  Dismissal is with prejudice as to Plaintiff's claims for declaratory judgment and violation of RESPA and without prejudice as to the claims for breach of contract, breach of fiduciary duty,

negligence, and violation of the CPA.  Any amended complaint must be filed within 60 days of the date of this Order.  The Court DENIES Plaintiffs Motion to Amend, docket no. 20, to add new claims and defendants.

IT IS SO ORDERED.

The Clerk is directed to send a copy of this Order to all counsel of record.

Dated this 25th day of January, 2013.

THOMAS S. ZILLY
United States District Judge

ORDER - 21