UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOEL JOHNSON,

          Plaintiff,

  v.

FEDERAL HOME LOAN
MORTGAGE CORPORATION,

          Defendant.

C12-1712 TSZ

ORDER

THIS MATTER comes before the Court on Defendant Federal Home Loan Mortgage Corporation's Motion to Dismiss for Failure to State a Claim, docket no. 28. Having reviewed the parties' briefs, as well as the papers filed in connection therewith, the Court enters the following Order.

### I.    Background

Plaintiff Joel Johnson refinanced his home with a loan from Taylor, Bean & Whitaker Mortgage Company ("TBW") in 2008. Second Amended Complaint ("SAC") at ¶ 5.2, docket no. 27. The Deed of Trust and the Promissory Note identify TBW as the

ORDER - 1

1  Lender.  Promissory Note and Deed of Trust, docket no. 28, Exs. 1-2.[1]  Defendant

2  Federal Home Loan Mortgage Corporation ("Freddie Mac") purchased Plaintiff's home

3  mortgage on the secondary mortgage market sometime shortly thereafter.  SAC at ¶ 5.5.

4  TBW continued to service the loan on behalf of Freddie Mac.  Id. at ¶ 5.11.

5      The Deed of Trust required Plaintiff to periodically pay to the lender funds for

6  certain escrow items including taxes and assessments, and mortgage insurance.  Deed of

7  Trust at 5.  TBW was responsible for the collection and payment of the funds in the

8  escrow account under its servicing contract with Freddie Mac.  Id. at ¶ 5.17.  Plaintiff

9  held a policy of homeowner's insurance with Safeco Insurance Company of America and

10  periodically paid funds for the Safeco insurance premium into the escrow account held by

11  TBW on his behalf.  SAC at ¶¶ 5.12-5.5.16.  In October of 2008, TBW failed to pay to

12  Safeco the insurance premium that was due on Plaintiff's insurance policy.  SAC at ¶

13  5.19-20.  As a result, in December 2008, Safeco cancelled Plaintiff's policy.  Id. at ¶ 5.29.

14      On January 25, 2009, Plaintiff's home was damaged in a fire.  Id. at ¶ 5.31.

15  Plaintiff tendered a claim to Safeco and the claim was denied because the insurance

16  policy had been cancelled for non-payment.  Id. at ¶¶ 5.33-34.  As a result, Plaintiff's

17  home was covered by a lender-placed insurance policy with Mount Vernon Fire

18  Insurance Company that had become effective when the Safeco policy was cancelled.  Id.

19  ---

20  [1] A court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting it into a motion for summary judgment.  Lee v. City of Los Angeles, 250 F.3d
21  668, 688 (9th Cir. 2001). Where the documents are not physically attached to the complaint, they may be considered if the documents' "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them."  Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998).  Here, the contents of the
22  Note and the Deed of Trust are alleged in the Complaint and no party questions their authenticity.

23

ORDER - 2

at ¶¶ 5.36-37.  Ultimately, after some delay in the claims handling process, id. at ¶¶ 5.40-44, Mount Vernon and Safeco both contributed to the cost of repairing Plaintiff's home and covering other losses resulting from the fire.  Id. at ¶¶ 5.42-44.

In 2009, TBW filed for bankruptcy and Cenlar FSB d/b/a Central Loan Administration & Reporting ("Cenlar") took over as the servicer of Plaintiff's loan on behalf of Freddie Mac.  Id. at ¶ 5.32.  Plaintiff stopped paying his mortgage premium beginning in March 2010.  Id. at ¶ 5.47.  He alleges that this was a result of additional, uncompensated living expenses resulting from the fire and the fact that Freddie Mac increased his monthly mortgage payment from $1,500 per month to $2,300 per month to compensate for the continued cost of the Mount Vernon insurance policy that had become effective when the Safeco policy was cancelled.  Id. at ¶¶ 5.47-49.  On August 24, 2011, Cenlar sent Plaintiff a notice of foreclosure.  Id. at ¶ 5.58.

Plaintiff filed a complaint in King County Superior Court on September 26, 2011, alleging claims against Freddie Mac for declaratory judgment, breach of contract, breach of fiduciary duty, negligence, and violation of the Washington Consumer Protection Act ("WCPA").  Docket no. 6.  Plaintiff's first amended complaint was filed in King County Superior Court on October 3, 2012, adding a claim under the Real Estate Settlement Procedures Act ("RESPA").  Id.  Freddie Mac removed the case to federal court on October 4, 2012.  Docket no. 1.

This Court dismissed Plaintiff's First Amended Complaint by Order dated January 25, 2013.  Order, docket no. 26.  The Court dismissed Johnson's claims for declaratory judgment and violation of RESPA with prejudice and dismissed the remaining claims

ORDER - 3

1  without prejudice and with leave to amend.  Id. at 20-21.  Plaintiff filed his Second
2  Amended Complaint on March 26, 2013, alleging all of the same claims included in his
3  First Amended Complaint.  Freddie Mac now moves to dismiss all of Plaintiff's claims
4  under Rule 12(b)(6) with prejudice and without leave to amend.

5  **II.     Discussion**

6  The Court may dismiss a complaint for "failure to state a claim upon which relief
7  can be granted."  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) may
8  be based on either the lack of a cognizable legal theory or the absence of sufficient facts
9  alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Department, 901
10 F.2d 696, 699 (9th Cir. 1990).  In ruling on a motion to dismiss, the Court must construe
11 the complaint in the light most favorable to the non-moving party.  Livid Holdings Ltd. v.
12 Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).  The Court must accept
13 all well-pleaded allegations of material fact as true and draw all reasonable inferences in
14 favor of the plaintiff.  Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661
15 (9th Cir. 1998).

16 Dismissal is appropriate where a complaint fails to allege "enough facts to state a
17 claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544,
18 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content
19 that allows the court to draw the reasonable inference that the defendant is liable for the
20 misconduct alleged."  Aschcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  As a result, a
21 complaint must contain "more than labels and conclusions, and a formulaic recitation of
22 the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.
23

### 1. *Declaratory Judgment and Violation of RESPA*

As an initial matter, Freddie Mac moves to dismiss Plaintiff's claims for declaratory judgment and violation of RESPA because this Court previously dismissed those claims with prejudice. Order at 7-8, 20, docket no. 26. Plaintiff offers no response to this argument. The Court dismisses these claims with prejudice for the same reasons discussed in the previous Order.

### 2. *Breach of Contract/Breach of Fiduciary Duty*

Plaintiff claims that Freddie Mac breached its contractual and fiduciary duties under the Note and Deed of Trust by failing to pay his insurance premium to Safeco and by misappropriating the funds from his escrow account that were intended for payment to Safeco. FAC ¶¶ at 7.1-7.3, 8.1-8.3. Freddie Mac argues that these claims are without merit.

The Court previously dismissed Plaintiff's claims for breach of contract and breach of fiduciary duty without prejudice. Order at 14, docket no. 26. In its previous Order, the Court concluded that "Plaintiff does not have a claim against Freddie Mac for primary liability, but only for liability based on the underlying wrongs of TBW on a theory of agency." Id. at 9. The Court then went on to conclude that Plaintiff failed to plead facts to support liability under a theory of agency because Freddie Mac did not assume liability for the wrongful conduct of its loan servicer and, in the alternative, even if Freddie Mac had assumed liability for the acts of the loan servicer, any liability was precluded by the Merrill doctrine. Plaintiff has failed to allege facts supporting a different result with respect to his Second Amended Complaint.

ORDER - 5

Plaintiff argues that when Freddie Mac purchased his loan from TBW it automatically assumed all of the obligations of TBW (or the "Lender") under the Note and Deed of Trust. Plaintiff's Response at 3. He cites Paullus v. Fowler, 59 Wn.2d 204, 212 (1961) to support this proposition. Paullus states the general principle of contract law that "[a]n assignee of a contract stands in the shoes of his assignor." Id. While this is a generally correct statement of law, it does not support Plaintiff's argument that Freddie Mac is liable for the acts of TBW under the facts of this case.

When Freddie Mac purchases a home loan on the secondary mortgage market, it does not assume responsibility for servicing the loan.

> Freddie Mac operates solely in the secondary market and is not involved in any way in the servicing of the mortgage loans which it purchases from originating lenders. Rather, Freddie Mac contracts with either the loan originator or another party to service the loans that they purchase, and Freddie Mac exclusively relies on the loan servicers to control all aspects of the mortgage servicing operations.

Paslowski v. Standard Mortg. Corp. of Georgia, 129 F.Supp.2d 793, 799 (W.D. Pa. 2000) (citing Hashop v. FHLMC, 171 F.R.D. 208, 210-11 (N.D. Ill. 1997)). As explained in the Court's previous order, because Freddie Mac did not assume any of TBW's duties with respect to servicing the loan when it purchased Plaintiff's mortgage on the secondary market, it does not "stand in the shoes of the assignor" with respect to the obligations of the servicer.

This is consistent with the Freddie Mac Single-Family Sellers and Servicers Guide ("the Guide"), which outlines the contractual relationship between Freddie Mac and its sellers/servicers. Pursuant to Section 1.2(a) of the Guide, a seller who sells mortgages to

ORDER - 6

Freddie Mac is required to service those mortgages for Freddie Mac in accordance with the standards set forth in the Guide.  This includes complying with all applicable federal and state laws, including RESPA.  Guide, § 6.2.  Moreover, Section 53.2 of the Guide specifically provides that "[u]nder the Purchase Documents, the Servicer contracts with Freddie Mac as an independent contractor to service Mortgages for Freddie Mac.  The Servicer is not Freddie Mac's agent or assignee."  Thus, under the Guide, Freddie Mac does not assume liability for the servicer's noncompliance with federal law, or assume an agency relationship with the servicer.

However, even assuming that Johnson has adequately pleaded facts supporting an agency relationship between TBW and Freddie Mac, Freddie Mac is still not liable for TBW's failure to pay Johnson's mortgage insurance premium under the Merrill doctrine.  As discussed in detail in the Court's previous Order, the Merrill doctrine provides that a federal agency is not bound by the unauthorized acts of its agents.  Order at 11-14.  Here, Plaintiff has failed to allege that Freddie Mac authorized TBW to stop making timely insurance payments on his Safeco insurance policy.  To the contrary, the Guide requires servicers to comply with all applicable federal laws, including RESPA.  Guide, § 6.2(a)(11). RESPA requires "the *servicer* shall make payments from the escrow account for such taxes, insurance premiums, and other charges *in a timely manner as such payments become due*."  12 U.S.C. § 2605(g).  Because Plaintiff has failed to allege that Freddie Mac authorized TBW to stop paying his insurance premium, and because TBW was affirmatively required to make such insurance payments "in a timely manner as such payments become due," the Merrill doctrine protects Freddie Mac from liability.

ORDER - 7

The Northern District of California recently addressed the <u>Merrill</u> doctrine in a similar case involving a mortgage loan owned by the Federal National Mortgage Association ("Fannie Mae") and serviced by Wells Fargo and reached the conclusion that Fannie Mae was protected from liability for the unauthorized acts of Wells Fargo under the <u>Merrill</u> doctrine.  <u>Cannon v. Wells Fargo Bank N.A.</u>, __ F.2d __, 2013 WL 132450, at *6-7 (N.D. Cal. Jan 9, 2013).  In that case, plaintiffs alleged claims against Fannie Mae and Wells Fargo based on Wells Fargo's practice of requiring home owners to carry force-placed flood insurance coverage.  <u>Id.</u> at *3.  According to plaintiffs, Wells Fargo's practice was improper because it earned a kick-back from every force-placed insurance policy, it required homeowners to carry insurance in excess of the outstanding balance on their mortgage, and it required retroactive coverage for periods during which no claims had accrued.  <u>Id.</u> at *2-3.  Fannie Mae filed a motion to dismiss the claims against it based on the <u>Merrill</u> doctrine.  The Court granted the motion, concluding that Fannie Mae was protected from liability by the <u>Merrill</u> doctrine because plaintiffs did not allege that the specific force-placed insurance practices employed by Wells Fargo were authorized by Fannie Mae.  <u>Id.</u> at *6-7.

For the foregoing reasons, Plaintiff's claims against Freddie Mac for breach of contract and breach of fiduciary duty are dismissed with prejudice.

3. ***Negligence***

Plaintiff claims that Freddie Mac acted negligently when it failed to timely pay his insurance premium to Safeco, resulting in the cancellation of the insurance policy.

Freddie Mac moves to dismiss the negligence claim, arguing that Plaintiff has failed to demonstrate the existence of any duty.  Plaintiff does not respond.

The first element of a negligence claim is the existence of a duty.  <u>Pedroza v. Bryant</u>, 101 Wn.2d 226, 228 (1984).  In the present case, Plaintiff has failed to demonstrate that Freddie Mac had a duty to make the insurance payment.  Rather, TBW, as the servicer of the loan, was required to make insurance payments from Plaintiff's escrow account.  Guide, § 6.2; RESPA, 12 U.S.C. § 2605(g).  Therefore, the Court grants Freddie Mac's motion to dismiss this claim.

### 4. *Consumer Protection Act*

To prevail in a private action under the WCPA, RCW 19.86.090, a plaintiff must establish the following elements: (1) the defendant engaged in an unfair or deceptive act or practice; (2) the act or practice occurred in the conduct of trade or commerce; (3) the act or practice impacted the public interest; (4) the plaintiff suffered injury in its business or property; and (5) a causal link exists between the unfair or deceptive act or practice and the injury suffered.  <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105 Wn.2d 778, 784-93 (1986).  Failure to meet any of these elements is fatal.  <u>Sorrel v. Eagle Healthcare, Inc.</u>, 110 Wn.App. 290, 298 (2002).

Because Plaintiff has failed to allege any claim against Freddie Mac that survives this motion to dismiss, he has failed to demonstrate that Freddie Mac engaged in an unfair or deceptive act or practice.  The Court grants Freddie Mac's motion to dismiss this claim.

### III.   Conclusion

The Court GRANTS Freddie Mac's motion to dismiss, docket no. 28.  This case is dismissed with prejudice.  Freddie Mac is protected from liability for TBW's unauthorized acts by the <u>Merrill</u> doctrine.  Moreover, Plaintiff has failed to allege the existence of a duty to support his claim for negligence or the existence of an unfair or deceptive act or practice supporting a claim under the WCPA.

IT IS SO ORDERED.

Dated this 5th day of May, 2013.

*[signature: Thomas S. Zilly]*

THOMAS S. ZILLY
United States District Judge